UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Dorothy Barnes-Griswold,

       Plaintiff,

v.                                       Civ. No. 03-4907 (JNE/JSM)
                                        ORDER

St. Paul Public Schools, Independent
School District No. 625,

       Defendant.

---

Jennie Brown, Esq., Brown Law Office, appeared for Plaintiff Dorothy Barnes-Griswold.

James Andreen, Esq., Erstad & Riemer, PA, appeared for Defendant St. Paul Public Schools, Independent School District No. 625.

---

      Dorothy Barnes-Griswold, a grade-school teacher, brought this action in Minnesota state court against her former employer, St. Paul Public Schools, Independent School District No. 625 (District), asserting claims of race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e - 2000e-17 (2000) (Title VII), disability discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 (2000) (ADA), age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1) (2000) (ADEA), and breach of contract.  The District removed the case to this Court and now moves for summary judgment on all claims.  For the reasons set forth below, the Court grants the District's motion with respect to the statutory claims.  The Court reserves ruling on the contract claim until the resolution of Barnes-Griswold's motion to amend, currently pending before the Honorable Janie S. Mayeron, United States Magistrate Judge.

# I.    BACKGROUND

The District employed Barnes-Griswold, an African-American, as a third-grade teacher at the Saturn River Front Academy (Saturn) from Fall 1999 to February 2002. The District previously employed Barnes-Griswold at other locations and in different positions beginning in 1971. During her time at Saturn, Barnes-Griswold was supervised by Dr. George Holt, and later by Principal Raymond Yu. Both counseled Barnes-Griswold concerning various aspects of her job performance.

On multiple occasions, Principal Yu reprimanded Barnes-Griswold for being late to school and for misconduct with students.[1] Saturn requires teachers to be in their classroom by 8:55 a.m. to open the classroom door and welcome students. Class instruction begins at 9:10 a.m. On October 22, 2001, Principal Yu issued a written reprimand and directive addressing Barnes-Griswold's tardiness during the preceding month. The directive required Barnes-Griswold to be in her classroom by 8:55 a.m. and stated that if her timeliness did not improve further disciplinary action would be taken. Thereafter, from October 25 to December 10, 2001, Principal Yu documented that Barnes-Griswold was late to school on eight occasions. Beginning on December 18, 2001, Principal Yu required Barnes-Griswold to use a time clock to sign in each morning. Barnes-Griswold did not comply with this request even though her union representative, Terri Ellison, advised her that failure to comply could result in Barnes-Griswold's termination for insubordination.

Principal Yu also issued reprimands to Barnes-Griswold with respect to her interactions with students. For example, on April 23, 2001, Principal Yu gave Barnes-Griswold a written

---

[1]    The record shows reprimands being issued to Barnes-Griswold as far back as 1989. Given that Barnes-Griswold's claims of disparate treatment involve her time under Principal Yu's supervision, the Court focuses the factual recitation on that time period.

reprimand for making inappropriate statements to students such as "calling students liars, using the word 'crap,' telling them they do not know how to read or write or that they should be able to read by now, and derogatory statements made to the students about other teachers." The reprimand directed to refrain from using vulgar language, to use words of encouragement with students, and to conduct herself in a professional manner. The reprimand stated that further incidents could result in more serious disciplinary action, including suspension or discharge.

Thereafter, Principal Yu received four reports from other teachers regarding Barnes-Griswold's disrespectful behavior toward students between October 2001 and February 2002. First, Consuelo Meyers, a teacher in Barnes-Griswold's classroom who assists students for whom English is a second language, reported that on October 29, 2001, Barnes-Griswold approached Student A who was talking out of turn and said, "Stop that or I'll throw you out of the room. I will literally throw you out of the room on your head." On December 14, after Barnes-Griswold grabbed Student B by the arm, Assistant Principal Becky Pedersen issued a written directive to her as follows: "This is a written directive to you not to move children by grabbing them or their clothes. This child and others need to feel secure in your classroom. The physical movement of this child by you was not made for safety reasons."

Three days later, on December 17, 2001, Tanya Carrier, a fifth-grade teacher, witnessed Barnes-Griswold grab Student C by the arm with force and shout something to the effect that the student needed to come right away the next time she called her name. As Barnes-Griswold's students proceeded up the stairs in front of Carrier, Carrier heard one of them state that Barnes-Griswold "don't do nothing but hit people." Carrier reported the incident to Principal Yu and Assistant Principal Pedersen. The next day, Principal Yu met with Barnes-Griswold and Ellison to discuss the incident as well as other issues.

Finally, Nichola Phillips, a fourth-grade teacher at Saturn, witnessed an incident between Barnes-Griswold and Student D on January 20, 2002.  According to Phillips, several of Barnes-Griswold's students were involved in a conflict in the hallway.  She approached and told them to stop and they did.  She then brought the students over to where Barnes-Griswold's class was lining up for lunch, and the students took their places in line.  Phillips apprised Barnes-Griswold of the occurrence and Barnes-Griswold ordered the students to come out of line and speak with her and Phillips.  Barnes-Griswold put her hands Student D's shoulders to steer him over to speak with Phillips.  At that point, he pulled away from Barnes-Griswold's touch.  Barnes-Griswold then began yelling at him, grabbed his shirt collar, and pulled him in Phillips' direction.  Phillips reported the incident to Assistant Principal Pedersen and submitted a memo detailing the events.  Principal Yu received Phillips' memo on February 3, 2002.  The next day, Principal Yu suspended Barnes-Griswold without pay for disrespectful treatment of students and for insubordination.

Post-suspension, Barnes-Griswold requested a hearing with the District's Superintendent, Dr. Patricia Harvey.  That hearing occurred on March 13, 2002, and by letter dated March 18, 2002, Dr. Harvey recommended that Barnes-Griswold be discharged.  On June 3, 2002, Barnes-Griswold filed a charge alleging race and disability discrimination with the City of St. Paul, Department of Human Rights (DHR).  On April 4, 2003, the DHR determined that there was no probable cause to believe that the District had discriminated against Barnes-Griswold because of her race or disability.  Barnes-Griswold also exercised her right under state law to present her case to a neutral arbitrator.  In November 2003, an arbitrator conducted hearings as to whether the District had a legally sufficient basis for terminating Barnes-Griswold.  The arbitrator issued her award on December 30, 2003, concluding that the District was justified in terminating

Barnes-Griswold. The Honorable David C. Higgs, Judge of Ramsey County District Court, affirmed the arbitrator's award on July 29, 2004.

## II.    DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A.    Race discrimination

In Count I of her Complaint, Barnes-Griswold alleges a race discrimination claim based on disparate treatment—specifically, that Principal Yu disciplined her more stringently than similarly situated Caucasian teachers. At the summary judgment stage, the Court's analysis of this claim is governed by the three-step burden-shifting analysis set forth in *McDonnell Douglas, Corp. v. Green*, 411 U.S. 792 (1973). The first step in the *McDonnell Douglas* analysis is for the plaintiff to demonstrate a prima facie case of discrimination. *Id.* at 802. If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to provide a

legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant meets this burden, the final step is for the plaintiff to show that the proffered nondiscriminatory reason is pretextual. *Id.* at 804-05.

To establish a prima facie case of race discrimination under a theory of disparate treatment, Barnes-Griswold must show that: (1) she belongs to a protected group; (2) she was meeting the legitimate expectations of her employer; (3) she suffered an adverse employment action; and (4) there are facts that permit an inference of discrimination—that is, similarly situated employees, who are not members of the protected group, were treated differently. *Jacob-Mua v. Veneman*, 289 F.3d 517, 521-22 (8th Cir. 2002); *Taylor v. Southwestern Bell Tel. Co.*, 251 F.3d 735, 740 (8th Cir. 2001). There is no dispute that Barnes-Griswold is a member of a protected group and that she suffered an adverse employment action.[2]

The District contends that it is entitled to summary judgment because Barnes-Griswold was not meeting its legitimate expectations. In support, the District first puts forth evidence of Barnes-Griswold's repeated tardiness in the morning and Barnes-Griswold's failure to adhere to measures designed to encourage her compliance—*e.g.*, directives and a time clock. In addition, the District relies on Barnes-Griswold's multiple reprimands and disregard of directives for incidents of inappropriately addressing and handling students.

In response, Barnes-Griswold does not directly dispute that she was repeatedly tardy, or that she participated in the described incidents. Instead, she states that she cannot recall some of the dates when she was late to work; that when she was tardy, her students were just fine without

---

[2] Barnes-Griswold disputes when, if at all, the District terminated her. However, because the District concedes that an adverse employment action was taken, Barnes-Griswold's prima facie case under *McDonnell Douglas* analysis is not affected by this dispute.

her; that her students knew not to take her "slang" literally; and that she was justified in forcibly moving Student C.

     "The standard for assessing performance is not that of the ideal employee, but rather what the employer could legitimately expect." *Calder v. TCI Cablevision of Mo., Inc.*, 298 F.3d 723, 729 (8th Cir. 2002) (quotations omitted). Here, the record reveals that Barnes-Griswold's performance was unsatisfactory, she disregarded reprimands, she ignored directives, and her performance—both in getting to work on time and in dealing with students—was a persistent problem that did not improve. The Court therefore concludes that Barnes-Griswold was not qualified for her position as a third-grade teacher because her job performance failed to meet the District's legitimate expectations, both in arriving to work on time and in behaving professionally with the students. *See Richmond v. Bd. of Regents of the Univ. of Minn.*, 957 F.2d 595, 598 (8th Cir. 1992) (finding plaintiff not qualified when her performance was unsatisfactory for over a year, she ignored progressive warnings and discipline, and her performance did not improve). Accordingly, Barnes-Griswold has failed to establish her prima facie case of race discrimination.

     Even if her work performance met the District's legitimate expectations, Barnes-Griswold fails to demonstrate facts that raise an inference that similarly situated teachers were not subjected to the same discipline. "The test to determine whether employees are similarly situated to warrant a comparison to plaintiff is a 'rigorous' one. Specifically, the individuals used for comparison must have . . . engaged in the same conduct without any mitigating or distinguishing circumstances." *Cherry v. Ritenour Sch. Dist.*, 361 F.3d 474, 479 (8th Cir. 2004) (quotations and citations omitted) (discussing disparate treatment analysis as applied in the third prong of the *McDonnell Douglas* analysis); *see also Taylor*, 251 F.3d at 740 (affirming grant of

summary judgment where plaintiff did not establish a prima facie case under a theory of disparate treatment because she failed to put forth evidence that other individuals were similarly situated to plaintiff).

In support of her claim that Principal Yu treated her differently than similarly situated teachers, Barnes-Griswold makes vague allegations that she was not provided with the same assistance that other teachers received, and that Caucasian teachers were also tardy but not disciplined.[3]   The Court's review of the record reveals that Barnes-Griswold has relied on unsupported conclusory allegations which are insufficient to raise a genuine issue of material fact.  *See Matsushita*, 475 U.S. at 587.  Notably, Barnes-Griswold fails to identify any specific teachers who engaged in conduct similar to her, and there is no evidence in the record that any other teacher had the lengthy record of tardiness or behavioral incidents involved in this case. Because Barnes-Griswold fails to demonstrate any facts in support of her assertion that similarly situated teachers were treated differently, she fails to meet her burden to demonstrate her prima facie case of discrimination.  Accordingly, the Court grants the District's motion as to Count I.

**B.     Disability discrimination**

In Count II of her Complaint, Barnes-Griswold alleges a claim for disability discrimination.  As with race claims, courts use the three-part *McDonnell Douglas* framework to analyze ADA claims.  *See Wilking v. County of Ramsey*, 153 F.3d 869, 872 (8th Cir. 1998).  To establish a prima facie case of discrimination under the ADA, a plaintiff must show that:  (1) she

---

[3]     By letter of February 3, 2005, approximately one month after the Court heard oral argument on the instant motion, counsel for Barnes-Griswold sent a letter to the Court citing Federal Rule of Civil Procedure 56(f) and asking to supplement the record with portions of Barnes-Griswold's deposition testimony taken on June 11, 2004.  Because Rule 56(f) does not apply to this situation, the Court denies the request to supplement.  The Court notes that even if the offered testimony was properly before the Court, its content would not alter the outcome in this case.

is disabled within the meaning of the ADA; (2) she is qualified to perform the essential functions of her job, with or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability.  *Alexander v. Northland Inn*, 321 F.3d 723, 726 (8th Cir. 2003).

The Court first turns to whether Barnes-Griswold is disabled within the meaning of the ADA.  The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  Major life activities include caring for one's self, performing manual tasks, walking, seeing, hearing, breathing, learning, working, sitting, standing, lifting, and reaching.  29 C.F.R. § 1630.2(j); *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 616 (8th Cir. 1997).  An impairment is "substantially limiting" if it renders an individual unable to perform a major life activity that the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform a particular major life activity as compared to an average person in the general population.  29 C.F.R. § 1630.2(j)(1)(i)-(ii).  The Eighth Circuit Court of Appeals has explained that the following factors are considered in determining whether a person is substantially limited in a major life activity:  (1) the nature and severity of the impairment; (2) its duration or anticipated duration; and (3) its long-term impact.  *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 949 (8th Cir. 1999).  The determination of whether an individual is substantially limited in a major life activity must be made on a case-by-case basis.  *Id*.

It appears that Barnes-Griswold asserts that she is disabled because she has insomnia.  Even assuming she suffers from insomnia, Barnes-Griswold does not attempt to demonstrate that

her condition limits one of her major life activities, to create a record of her impairment, or to establish that she was regarded as having an impairment.  *See* 42 U.S.C. § 12102(2).  Without more, Barnes-Griswold fails to demonstrate that she is disabled within the meaning of the ADA and therefore cannot meet her prima facie case for disability discrimination.  Accordingly, the Court grants the District's motion as to Count II.

**C.     Age discrimination**

In Count III of her Complaint, Barnes-Griswold alleges a claim of age discrimination. The District contends that it is entitled to summary judgment on Barnes-Griswold's age discrimination claim because she failed to exhaust her administrative remedies.  The ADEA requires that a plaintiff file an administrative charge of discrimination with the Equal Employment Opportunity Commission (EEOC) before commencing a civil action.  29 U.S.C. § 626(d)(2).   The Eighth Circuit Court of Appeals has recently stated:

> The reason for requiring the pursuit of administrative remedies first is to provide the EEOC with an initial opportunity to investigate allegations of employment discrimination and to work with the parties toward voluntary compliance and conciliation. The proper exhaustion of administrative remedies gives the plaintiff a green light to bring [his or] her employment-discrimination claim, along with allegations that are like or reasonably related to that claim, in federal court. Although we have often stated that we will liberally construe an administrative charge for exhaustion of remedies purposes, we also recognize that there is a difference between liberally reading a claim which lacks specificity, and inventing, *ex nihilo*, a claim which simply was not made.   The claims of employment discrimination in the complaint may be as broad as the scope of the EEOC investigation which reasonably could be expected to result from the administrative charge.

*Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005) (internal citations and quotations omitted).

The record reveals that Barnes-Griswold filed charges of discrimination with the EEOC and the DHR, but only designated claims of race and disability discrimination.   Similarly,

Barnes-Griswold's Complaint states that she exhausted her administrative remedies only with respect to her race and disability claims.  (*See* Compl. ¶ 4.)  Barnes-Griswold fails to address this issue in her responsive memorandum.  Thus, because she did not include the ADEA in her charges, and because she fails to identify facts in the record that would support a finding that an ADEA claim is reasonably related to her claims of race and disability discrimination, the Court concludes that she has failed to exhaust her administrative remedies with respect to her age discrimination claim.  *See Parisi*, 400 F.3d at 585.  Accordingly, the Court grants the District's motion as to Count III.

### III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.      The District's motion for summary judgment [Docket No. 13] is GRANTED with respect to Counts I, II, and III of Barnes-Griswold's Complaint.

Dated:  May 24, 2005

    S/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge